## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

TOWN OF WETHERSFIELD,

    *Plaintiff,*

  v.

PURDUE PHARMA L.P., D/B/A PURDUE
PHARMA (DELAWARE) LIMITED
PARTNERSHIP; PURDUE PHARMA INC.;
THE PURDUE FREDERICK COMPANY, INC.;
RHODES PHARMACEUTICALS, L.P.;
RHODES TECHNOLOGIES; RHODES
PHARMACEUTICALS INC.; RHODES
TECHNOLOGIES INC.; TEVA
PHARMACEUTICALS USA, INC.;
CEPHALON, INC.; JOHNSON & JOHNSON;
JANSSEN PHARMACEUTICALS, INC.;
ORTHO-MCNEIL-JANSSEN
PHARMACEUTICALS, INC.
n/k/a JANSSEN PHARMACEUTICALS, INC.;
ENDO HEALTH SOLUTIONS INC.; ENDO
PHARMACEUTICALS, INC; ALLERGAN PLC
f/k/a ACTAVIS PLC; ACTAVIS, INC. f/k/a
WATSON PHARMACEUTICALS, INC.;
WATSON LABORATORIES, INC.; ACTAVIS
LLC; ACTAVIS PHARMA, INC. f/k/a WATSON
PHARMA, INC.; MALLINCKRODT LLC;
SPECGX LLC; and INSYS THERAPEUTICS,
INC.,

    Manufacturer Defendants,

  - and -

MCKESSON CORPORATION; CARDINAL
HEALTH, INC.; AMERISOURCE BERGEN
DRUG CORPORATION; CVS HEALTH
CORPORATION; CVS PHARMACY, INC.;
RITE AID CORPORATION; WALGREEN
BOOTS ALLIANCE, INC.; and WALMART,
INC.,

    Distributor Defendants,

  - and -

Civil Action No. _____

(Removal from:

Superior Court
Judicial District of Hartford
at Hartford)

JOHN KAPOOR; RICHARD SACKLER;
THERESA SACKLER; KATHE SACKLER;
JONATHAN SACKLER; MORTIMER D.A.
SACKLER; BEVERLY SACKLER; DAVID
SACKLER; AND ILENE SACKLER
LEFCOURT,

     Individual Defendants.

## NOTICE OF REMOVAL

In accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453, Defendant Walgreens Boots Alliance, Inc. ("Walgreens"), with full reservation of defenses,[1] gives notice of the removal of this action from the Superior Court, Judicial District of Hartford to the United States District Court for the District of Connecticut. This case is removable under CAFA because the lawsuit is essentially a class action lawsuit, litigation of this case in federal court promotes CAFA's overall purpose, and CAFA's statutory requirements are satisfied. In support of removal, Walgreens provides the required "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

---

[1] By filing this Notice of Removal, Walgreens Boots Alliance, Inc. does not concede that it is a proper party to this action and expressly reserves all defenses, including lack of personal jurisdiction.

## I.      Nature of Removed Action

1.      On or about June 12, 2019, Plaintiff Town of Wethersfield ("Plaintiff")
returned a Writ, Summons, and Complaint[2] in the Superior Court, Judicial District
of Hartford, commencing a civil action, Docket No: HHD-CV-19-6112864-S, for
claims relating to prescription opioid medications. Plaintiff asserts claims against
three defendant groups: manufacturers, distributors, and individual defendants.
Plaintiff brings claims for public nuisance (Count One), violations of the
Connecticut Unfair Trade Practices Act (Counts Two and Three), common law fraud
(Counts Four and Five), negligent misrepresentation (Count Six), negligence (Count
Seven), and unjust enrichment (Count Eight). Plaintiff seeks damages and
equitable relief for alleged injuries to its residents and to itself.

2.      This action is one of more than 2,000 opioid lawsuits filed by
government entities against manufacturers and distributors of prescription opioid
medications. Plaintiffs in these cases allege that Defendants are liable for the
economic and non-economic injuries suffered by resident doctors, health care
payors, and opioid-addicted individuals, as well as for the costs incurred in
addressing the opioid epidemic.

3.      On December 5, 2017, the Judicial Panel on Multidistrict Litigation
("JPML") created a Multidistrict Litigation in the Northern District of Ohio ("Opiate
MDL") for cases just like this one—cases in which "cities, counties and

---

[2] The original Complaint is attached as **Exhibit 1**.

states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Dkt. No. 1 (Dec. 12, 2017 Transfer Order) (**Exhibit 2**). To date, nearly 1,900 actions have been transferred to the Opiate MDL.

4. Plaintiff's 187-page Complaint resembles nearly all of the complaints filed in the Opiate MDL. The bulk of the allegations in these complaints have been levied by cities and counties against the manufacturers for alleged deceptive marketing of prescription opioids from approximately the 1990s to the present. In fact, the allegations are nearly identical to those asserted in *The County of Summit, Ohio, et. al. v. Purdue Pharma L.P., et al.*, MDL No. 17-md-2804, Case No. 1:18-op-45090, a bellwether case that is currently being litigated in the Opiate MDL.

5. Plaintiff's Complaint also resembles each of the following cases which was removed to federal court under CAFA and transferred to the Opiate MDL:

a. *Noble County, Ohio by the Noble County Commissioners v. Cardinal Health, Inc., et al.*, 2:18-cv-01379-EAS-EPD, Dkt. No. 1 (S.D. Ohio, Nov. 6, 2018) (Sargus, C.J.) (removed under CAFA and transferred to the Opiate MDL);

25668.000/709067.1

b.   *The People of the State of Illinois and St. Clair County, Illinois v. Teva Pharmaceuticals USA, Inc., et al.*, 3:18-cv-02077 (Gilbert, J.) (S.D. Ill., Nov. 15, 2018) (same);

c.   *Meigs County, Ohio v. Cardinal Health, Inc.*, 2:18-cv-01582-EAS-EPD (S.D. Ohio, Dec. 6, 2018) (Sargus, C.J.) (same);

d.   *Washington County, Ohio, By its Commissioners, et al. v. Cardinal Health, Inc., et al.*, 2:18-cv-01706-EAS-KAJ (S.D. Ohio, Dec. 14, 2018) (Sargus, C.J.) (same);

e.   *County of Carbon v. Purdue Pharma L.P., et al.*, 2:18-cv-05625 (E.D. Pa., Dec. 31, 2018) (Sánchez, C.J.) (same);

f.   *Delaware County, Pennsylvania v. Purdue Pharma L.P., et al.*, 2:18-cv-05627 (E.D. Pa., Dec. 31, 2018) (Sánchez, C.J.) (same);

g.   *Jefferson County v. Dannie E. Williams, M.D., et al.*, 4:19-cv-00157, Dkt. No. 1 (E.D. Mo., Jan 31, 2019) (White, J.) (same); and

h.   *The People of the State of Illinois, The People of Union County, and County of Union v. Purdue Pharma L.P., et al.*, 1:19-cv-2169 (N.D. Ill., Mar. 28, 2019) (Walker, J.) (same).

6.   The thrust of the Complaint is that the "Manufacturer Defendants" allegedly engaged in a "disinformation campaign to open the market for their [opiate] drugs, despite the known risk of addiction." *See* Compl. ¶ 148. This

5

campaign, Plaintiff alleges, was launched "for reasons of greed, rather than a scientific basis, and they continue to misrepresent the safety and efficacy of opioid treatment for chronic pain." *Id.* ¶ 150. As part of this "campaign" Plaintiff alleges that Manufacturer Defendants "spent hundreds of millions of dollars . . . funding, assisting, encouraging, and directing [Key Opinion Leaders] to deliver scripted talks, publish misleading studies, and present CMEs that disseminated false and incomplete information to medical practitioners," and "deploying sales representatives, who visited doctors and other prescribers, who marketed their opioids for 'non-indicated' or off-label purposes, not approved by the FDA . . . ." *Id.* ¶ 151.

7.      As to the "Distributor Defendants," Plaintiff alleges that they "fail[ed] to report suspicious orders, reasonably investigate such orders, or halt such orders, thereby knowingly, recklessly, or negligently making grossly excessive distributions of opioid drugs into the Town of Wethersfield, and its surrounding areas, which threatened (and continues to threaten) the public health and safety of residents of the Town." *Id.* ¶ 407. Plaintiff alleges that, as a result of such activities, each of the "Big Three" Distributor Defendants "repeatedly and purposefully breached its duties under state statutory and common law with clear knowledge that a foreseeable result of its breach would be the diversion of dangerous prescription opioids for non-medical purposes." *Id.* ¶ 408. As for the "National Retail Pharmacies," Plaintiff alleges that, "[l]ike the "Big Three Distributor Defendants,"

they are "responsible for preventing diversion of prescriptions opioids into the illegal market by . . . monitoring and investigating suspicious activities," but also have additional duties as "public-facing institutions with direct connections to the communities they serve." *Id.* ¶¶ 418-19.

8.     Regarding the Individual Defendants, Plaintiff alleges that they controlled and directed the alleged misconduct engaged in by the Manufacturer Defendants. *See, e.g.*, Compl. ¶¶ 503, 540-48, 556-62.

9.     Based on these allegations, Plaintiff claims a litany of injuries to its residents and to itself stemming from the alleged abuse of addictive opioids. These include alleged damages in the form of expenses incurred in providing health, social, and law enforcement services related to opioid addiction and death, as well as economic losses on behalf of its citizens. *Id.* at ¶¶ 477-527.

## II.    This Action Is Removable Under CAFA

10.     Like other prescription opioid lawsuits brought by municipalities, Plaintiff's lawsuit is removable under the CAFA, 28 U.S.C. §§ 1332(d) and 1453(b). That is because: (1) litigation of this case in federal court raises factual and legal issues of national importance that would further CAFA's overall purpose; and (2) each of CAFA's statutory requirements is satisfied. This Court must assess jurisdiction under CAFA at the time of removal. 28 U.S.C. § 1332(d).

25668.000/709067.1

## A.     This Is an Interstate Case of National Importance

11.     First, this lawsuit is precisely the type of case that Congress intended to be litigated in federal court. Congress has expressed its intent "to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34; *see also Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) ("CAFA's primary objective" is to "ensur[e] Federal court consideration of interstate cases of national importance.") (citations and quotes omitted); *accord Dart Cherokee*, 135 S. Ct. at 554.

12.     This case is one of hundreds of cases filed across the country in which government entities have sued prescription opioid manufacturers, distributors, and others for harms arising from the abuse of these drugs. The Opiate MDL has nearly 1,900 cases that are part of a national opioid "crisis" and epidemic allegedly besieging certain areas of Connecticut and the rest of the country. Plaintiff scripted its Complaint from complaints in cases already being litigated in the Opiate MDL. For example, Plaintiff asserts that its claims touch upon issues of national importance, as well as duties under federal law. *See, e.g.*, Compl. ¶ 1 (referring to an opioid epidemic "in the United States"); *id.* ¶ 49 (contending that certain defendants "engaged in the manufacture, promotion, distribution, and sale of opioids nationally"); *id.* ¶ 432 (alleging that certain defendants "fail[ed] to abide by state

8

and federal law and regulations"); *id.* at ¶ 565 (alleging that certain defendants violated their obligations and breached their duties under federal law).

13.    As Plaintiff avers, the issues in this case implicate factual and legal issues that span well beyond State lines and, as a result, should be litigated in federal court along with the other lawsuits in the Opiate MDL. In denying remand in another opioid case in the diversity context, the United States District Court for the Southern District of West Virginia observed the following:

> Here, where the opioid epidemic is pervasive and egregious, there is at least a possibility of prejudice to the defendants at the hands of a jury drawn exclusively from the very county that is the plaintiff in this suit. A federal jury casts a wider net and is drawn from a division that comprises several counties. All may have an opioid problem, but not one that is specific to the plaintiff county.

*City of Huntington v. AmerisourceBergen Drug Corp.*, No. CV 3:17-01362, 2017 WL 3317300, at *2 (S.D. W. Va. Aug. 3, 2017).

14.    Plaintiff, like the other plaintiffs in the Opiate MDL, has alleged that the Distributor Defendants failed to make reports to the Drug Enforcement Administration ("DEA"). *See* Compl. ¶ 565 (alleging that Defendants were required to "halt the suspicious sales of drugs throughout the United States" and "alert the DEA"). Judge Polster has established protocols for the DEA to submit confidential and sensitive data from its internal databases for use in the litigation.[3]

---

[3] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster

9

15.     In short, jurisdiction in this matter is consistent with and promotes the purpose of CAFA.

**B.     CAFA's Statutory Requirements Are Met**

16.     To be removed under CAFA, this suit must qualify as a class action, there must be 100 members of the proposed class, the amount in controversy must exceed $5 million, and there must be minimum diversity between the parties. 28 U.S.C. §§ 1332(d), 1453. All these requirements are met here.

### i.     In Substance, This Case Is a Class Action

17.     CAFA applies here because this case essentially is a class action. While Plaintiff has not alleged a putative class action on the face of its Complaint, and has taken pains to contend that there is no federal question presented, this case is removable because it is "in substance a class action." *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013).

18.     CAFA provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); *see also Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (recognizing that "CAFA amends the diversity statute . . . to confer original federal jurisdiction over any class action involving (1) 100 or more class members,

---

required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

(2) an aggregate amount in controversy of at least $5,000,000 . . . , and (3) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states."). CAFA "calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name." *W. Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010) (holding defendant properly removed action brought by the State of West Virginia against Comcast under CAFA because subscribers were the real parties in interest); *see also Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) ("[L]itigation counts as a class action if it is either filed as a representative suit or becomes a 'mass action' at any time.").

19.     CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Consistent with Congress's overall objective in favoring federal diversity jurisdiction over class actions with interstate ramifications, "the definition of 'class action' is to be interpreted liberally. Its application should not be confined solely to lawsuits that are labelled 'class actions' . . . . *Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions*."

S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34 (emphasis added).

20.    Thus, where a lawsuit "resembl[es] a class action" by asserting claims both individually and on behalf of others, CAFA removal has been found proper. *Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019). Courts have refused to "prioritize a complaint's use of magic words over its factual allegations," and have held that CAFA jurisdiction exists even where the complaint "does not seek class certification" or "omits reference to" a state statute "analogous to Rule 23." *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 900-01 (8th Cir. 2017); *see also Dart Cherokee*, 135 S. Ct. at 554 ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"); *Badeaux*, 358 F. Supp. 3d, 567 ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.").

21.    Here, Plaintiff is acting as a representative for a class of residents who were allegedly harmed, either directly or indirectly, by Defendants' purported misconduct. Plaintiff alleges that Defendants have inflicted both economic and non-economic injuries on their individual residents.

22.    Plaintiff's alleged injuries derive from its residents' injuries and cannot be separated from those injuries. Plaintiff seeks to recover costs in providing law

25668.000/709067.1

Case 3:19-cv-01041-AVC   Document 1   Filed 07/02/19   Page 13 of 23

enforcement, medical, and social services for opioid addiction, emergencies, and overdose deaths, all of which stem from its residents' alleged opioid abuse and addiction. Damages, too—to the extent that there are any attributable to Defendants—would be a calculation of aggregate damages resulting from individual instances of opioid addiction and death. For instance, Plaintiff alleges that Defendants' alleged scheme harmed "the public health of Americans, Connecticut residents, and residents of the Town of Wethersfield." Compl. ¶ 10; *see also, e.g.*, *id.* ¶ 352 ("This misconduct caused injury in Wethersfield by, among other things, killing its residents . . . ."); *id.* ¶ 535 ("Each Defendant's conduct . . . has resulted in significant and unreasonable interference with the public health, safety, peace, and welfare of Wethersfield's residents."); *id.* ¶ 411 (alleging that diversion of prescription drugs "subject[ed] Americans and Connecticut residents, including residents of the Wethersfield community, to grievous harm up to, and including, death by overdose").

23.     Plaintiff has expressly brought this action in a representative capacity on behalf of its residents. *See id.* ¶ 45.

25668.000/709067.1

### ii.    CAFA's 100-Member Requirement Is Met

24.    Plaintiff's Complaint satisfies CAFA's 100-member requirement because the putative class consists of thousands of residents and at least hundreds injured. *See* 28 U.S.C. § 1332(d)(5)(B); *see also* Compl. ¶ 41.

25.    Here, the Complaint alleges that the Town of Wethersfield, which "at the 2010 census" had a population of 26,668, Compl. ¶ 41, "has been struck particularly hard by the influx of opioid drugs and resulting boom in the number of opioid addicts," *id*. ¶ 490. The number of opioid-related deaths in Wethersfield has risen from 2 deaths in 2012 to 6 in 2017. *Id*. Statewide, "917 people in Connecticut died from drug overdoses in 2016, representing a more than 25% jump from 2015 when 729 people died." *Id*. ¶ 486. Accordingly, the potential number of people who have been or may be affected thus well exceeds the 100-member requirement under CAFA.

### iii.    CAFA's Minimal Diversity Requirements Are Met

26.    There is minimal diversity between Plaintiff and Defendants under CAFA. District courts have original jurisdiction of "any civil action in which the controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA eliminates the requirement of complete diversity. Instead, CAFA requires only minimal diversity—

14

meaning that the parties are diverse if the plaintiff's citizenship differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A).

27.     For purposes of diversity jurisdiction, a political subdivision is a citizen of the state. *See Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State . . . is a citizen of the State for diversity purposes."). A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For purposes of CAFA, the citizenship of any unincorporated association, such as limited partnerships and limited liability companies, is determined by the entity's principal place of business and the State under whose laws it is organized. 28 U.S.C. § 1332(d)(10).

28.     There is minimal diversity between the parties. Plaintiff Town of Wethersfield is a political subdivision of Connecticut. And many of the Defendants are citizens of States other than Connecticut. To name just a few:

     a.     Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. are both corporations organized under the laws of Delaware and both maintain their principal places of business in Malvern, Pennsylvania. They are, accordingly, citizens of Delaware and Pennsylvania.

     b.     Defendant Teva Pharmaceuticals USA, Inc. is a corporation organized under the laws of Delaware with its principal place of

25668.000/709067.1

business in North Wales, Pennsylvania. It is, accordingly, a citizen of Delaware and Pennsylvania.

c.      Defendant Johnson & Johnson is a corporation organized under the laws of New Jersey with its principal place of business in New Brunswick, New Jersey. It is, accordingly, a citizen of New Jersey.

d.      Defendant Cardinal Health, Inc. is a corporation organized under the laws of Ohio with its principal place of business in Dublin, Ohio. Accordingly, it is a citizen of Ohio.

e.      Defendant Walgreens Boots Alliance, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Deerfield, Illinois. Accordingly, it is a citizen of Delaware and Illinois.

29.     Because there is diversity of citizenship between at least one plaintiff and at least one defendant, this action meets the minimal diversity requirement under Section 1332(d)(2)(A).

**iv**.     **The Amount in Controversy Exceeds the Jurisdictional Limit**

30.     The amount in controversy exceeds the jurisdictional threshold under CAFA. Where, as here, a plaintiff alleges no specific amount of damages, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S.

16

Ct. at 554. And, in making such determinations, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

31.     Here, Plaintiff alleges injuries resulting from opioid abuse and addiction that has allegedly afflicted Plaintiff and its residents with allegations extending as far back as the 1990s. *See, e.g.*, Compl. ¶ 6. Given the extent of the alleged injuries and time period, the alleged amount in controversy easily exceeds $5 million.[4]

## III.   Compliance With Procedural Requirements

32.     Walgreens has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446 and the District of Connecticut.

33.     Walgreens is filing this Notice of Removal pursuant to U.S.C. § 1441(a) in the United States District Court for the District of Connecticut, because the state court in which the action is pending, the Superior Court, Judicial District of Hartford, is within this federal judicial district and this division. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

---

[4] The amount in controversy represents only what Plaintiff requests at this stage in the proceeding. This is not an admission that Plaintiff is entitled to recover this amount. *See, e.g.*, *Plyler v. Whirlpool Corp.*, No. 08 C 6637, 2012 WL 469883, at *2 (N.D. Ill. Feb. 13, 2012) ("[A] defendant's statement in a Notice of Removal concerning the amount in controversy does not constitute a judicial admission to plaintiff's ultimate damage entitlement.").

34.     Walgreens was served in this action on June 4, 2019.[5] Walgreens is removing the case within 30 days of that date; therefore, this removal is timely under 28 U.S.C. § 1446(b). *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 356 (1999).

35.     In accordance with 28 U.S.C. § 1446(a), a copy of "all process, pleadings, orders, and other documents then on file in the State Court," are attached as **Exhibit 4**.[6]

36.     After filing this Notice, in accordance with 28 U.S.C. § 1446(d), Walgreens will serve a copy of this Notice upon the Plaintiff, and will file a copy of the Notice with the Clerk of the Superior Court, Judicial District of Hartford.

37.     For the purposes of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1446(b), all Defendants who have been properly joined and served must consent to removal. Under CAFA, however, "[a] class action may be removed . . . by any defendant *without* the consent of all defendants." 28 U.S.C. 1453(b) (emphasis added).

38.     Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of any Defendant's right to assert any and all defenses or objections to the Complaint, including lack of personal jurisdiction. If there are any questions that arise as to the propriety of removal of this action, Walgreens respectfully

---

[5] A copy of Walgreens' appearance is attached hereto as **Exhibit 3**.

[6] With the exception of the Complaint, which is attached as **Exhibit 1**, to avoid duplication as it is voluminous.

requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal, without waiver of its objection to personal jurisdiction.

## Conclusion

WHEREFORE, Walgreens removes this action to this Court for further proceedings according to law.

Dated:  July 2, 2019

Respectfully submitted,

WALGREENS BOOTS ALLIANCE, INC.

By:  /s/      ct034671
One of Its Attorneys

Thomas V. Daily (ct034671)
Agnieszka R. Larson (ct291251)
REID AND RIEGE, P.C.
One Financial Plaza
Hartford, CT 06103
Tel: 860.240.1067
Fax: 860.240.1002
tdaily@rrlawpc.com
alarson@rrlawpc.com

Lester C. Houtz*
Alex J. Harris*
BARTLIT BECK LLP
1801 Wewatta Street
Denver, CO 80202
Tel: (303) 592-3177
Fax: (303) 592-3140
les.houtz@bartlitbeck.com
alex.harris@bartlitbeck.com

*denotes national counsel who will seek pro hac vice admission*

19

# CERTIFICATE OF SERVICE

This is to certify that on this the 2nd day of July, 2019, a copy of the foregoing was filed electronically.  Parties may access this filing through the Court's CM/ECF system.  In addition, a copy of the foregoing will be served on the following by e-mail (where available), and first-class mail, postage prepaid.

## PARTIES WITH APPEARANCES BY COUNSEL IN STATE COURT ACTION

**Town of Wethersfield**
Margaret B. Ferron, Esq.
Scott+Scott Attorneys at Law LLP
156 South Main Street
P.O. Box 192
Colchester, CT  06415
mferron@scott-scott.com
david.scott@scott-scott.com
jscolnick@scott-scott.com

**Purdue Pharma L.P. d/b/a Purdue
   Pharma (Delaware) Limited Partnership,
Purdue Pharma Inc.,
The Purdue Frederick Company, Inc.**
Kim E. Rinehart, Esq.
Wiggin & Dana LLP
P.O. Box 1832
New Haven, CT  06508
krinehart@wiggin.com

**Johnson & Johnson, Janssen Pharmaceuticals,
Inc., Ortho-McNeil-Janssen Pharmaceuticals,
Inc., n/k/a Janssen Pharmaceuticals, Inc.**
Christopher R. Drury, Esq.
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT  06103
cdrury@goodwin.com

**Endo Health Solutions, Inc.
Endo Pharmaceuticals, Inc.**
Catherine Ann Mohan, Esq.
McCarter & English LLP
CityPlace I
185 Asylum St., 36th Fl.
Hartford, CT  06103
cmohan@mccarter.com

**Mallinckrodt LLC
SpecGX LLC**
Brian E. Spears, Esq.
Spears Manning & Martini LLC
2425 Post Road, Suite 203
Southport, CT  06890
bspears@spearsmaning.com

**Insys Therapeutics, Inc.**
Dawn L. Rudenko, Esq.
Holland & Knight
263 Tresser Blvd., #1400
Stamford, CT  06901
dawn.rudenko@hklaw.com

**McKesson Corporation**
Patrick M. Noonan, Esq.
Donahue Durham & Noonan PC
Concept Park
741 Boston Post Road
Guilford, CT  06437
pnoonan@ddnctlaw.com

**AmerisourceBergen Drug Corporation**
David Martin, Esq.
Cummings & Lockwood
Six Landmark Square
Stamford, CT  06901
dmartin@cl-law.com

**CVS Health Corporation**
**CVS Pharmacy, Inc.**
Paul E. Dwyer, Jr., Esq.
McElroy Deutsch Mulvaney & Carpenter LLP
117 Metro Center Blvd., Suite 1004
Warwick, RI  02886
pdwyer@mdmc-law.com

**Walmart, Inc.**
Terri L. Chase, Esq.
Jones Day
250 Vesey Street
New York, NY  10281
tlchase@jonesday.com

**John Kapoor**
Kurt M. Mullen, Esq.
Nixon Peabody
Exchange Place
53 State Street
Boston, MA  02109
kmullen@nixonpeabody.com

**Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., Watson Laboratories, Inc., Actavis, LLC**
Christopher M. Wasil, Esq.
Morgan, Lewis & Bockius LLP
One State Street
Hartford, CT  06103
christopher.wasil@morganlewis.com

**Beverly Sackler, David Sackler, Richard Sackler, Jonathan Sackler**
Robert M. Frost, Jr., Esq.
Frost Bussert, LLC
129 Church Street, Suite 226
New Haven, CT  06510

rmf@frostbussert.com

**Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.**
John P. D'Ambrosio, Esq.
Cowdery & Murphy, LLC
280 Trumbull Street, 22nd Floor
Hartford, CT  06103
jdambrosio@cowderymurphy.com

## <u>NON-APPEARING PARTIES IN STATE COURT ACTION/OTHER COUNSEL</u>

Rhodes Pharmaceuticals, L.P.
Agent: Corporation Services
50 Weston Street
Hartford, CT  06120

Rhodes Technologies
Rhodes Pharmaceuticals Inc.
Rhodes Technologies Inc.
498 Washington Street
Coventry, RI  02816

Allergan plc f/k/a Actavis plc
U.S. Administrative Headquarters
5 Giraida Farms
Madison, NJ  07940

Cardinal Health, Inc.
7000 Cardinal Pl
Dublin, OH  43017

Rite Aid Corporation
30 Hunter Lane
Camp Hill, PA  17011

Theresa Sackler, Kathe Sackler,
<u>Mortimer D.A. Sackler, Ilene Sackler Lefcourt</u>
c/o John W. Cerreta
Day Pitney LLP
242 Trumbull Street
Hartford, CT  06103

Richard Sackler, Jonathan Sackler,
<u>Beverly Sackler, David Sackler</u>
c/o Joseph Hage Aaronson LLC
ATTN:  Benjamin H. Albert, Esq.
485 Lexington Ave., 30th Floor
New York, NY  10017

Theresa Sackler, Kathe Sackler,
<u>Mortimer D.A. Sackler, Ilene Sackler Lefcourt</u>
c/o Debevoise & Plimpton LLP
ATTN:  Marieugenia Cardenas, Esq.
919 Third Avenue
New York, NY  10022

**NOT APPEARED AS OF 7/2/19**
**Rhodes Pharmaceuticals L.P.,**
**Rhodes Technologies,**
**Rhodes Pharmaceuticals Inc.**
<u>**Rhodes Technologies Inc.**</u>
Bryan Matthew Abramoske, Esq.
Cetrulo LLP
2 Seaport Lane, 10th Floor
Boston, MA  02210
babramoske@cetllp.com

<u>**Cardinal Health, Inc.**</u>
Maureen D. Cox, Esq.
Carmody Torrance Sandak & Hennessey LLP
P.O. Box 1110
Waterbury, CT  06721
mcox@carmodylaw.com

/s/    Thomas V. Daily
Thomas V. Daily